Argued and submitted November 24, 1980, reversed March 2, 1981

In the Matter of the Compensation
of Marion Kizer, Claimant.

KIZER et al,
*Respondents,*

*v.*

GUARANTEE CHEVROLET et al,
*Petitioners.*

(WCB Nos. 78-7566 and 78-2884, CA 18049)

624 P2d 186

A. Thomas Cavanaugh, Yachats, argued the cause and filed the brief for petitioners.

Robert W. Muir, Albany, argued the cause for respondent Marion Kizer. With him on the brief was Emmons, Kyle, Kropp & Kryger, Albany.

Richard D. Barber, Jr., Certified Law Clerk, State Accident Insurance Fund, Salem, argued the cause for respondent State Accident Insurance Fund. On the brief were K. R. Maloney, General Counsel, James A. Blevins, Chief Trial Counsel, and Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is an appeal by the employer, Guarantee Chevrolet, and its compensation carrier from an order on review issued by the Workers' Compensation Board that Guarantee and its carrier were solely responsible for claimant's compensation. The order reversed the referee's opinion and order which had held the first employer, Benton County, and its carrier, SAIF, liable.

The facts of the case were stipulated to by the parties and may be summarized as follows:

Claimant suffered an anterior and posterior myocardial infarction in 1970 while employed as a Benton County Sheriff's deputy. The claim was accepted by SAIF with awards of permanent partial disability. Thereafter, claimant developed related health problems. On September 27, 1975, he had a "blackout" with a 30-minute period where events were foggy. His condition forced his retirement in February, 1976. Claimant's condition then was determined to be a compensable aggravation of the 1970 infarction, and he was carried on temporary total disability status by SAIF through November 28, 1978. During that period he reported experiencing exertional shortness of breath, some angina, and occasional transient dizziness and lightheadedness, but no further "blackouts" per se until March 8, 1978. He was seen regularly by physicians for his ongoing disease and condition.

In March, 1978, he took a job with Guarantee Chevrolet transporting cars from other dealerships to Guarantee Chevrolet in Junction City. He was paid $10 per trip. On March 8, while ferrying a car from Bend to Junction City on the McKenzie River Highway, he drove off the road, with no recollection of the 15 or 20 miles preceding the point where the accident occurred. He sustained both orthopedic injury and an aggravation of his heart problems necessitating the implantation of a pacer.

The issue presented is simply who is the responsible employer, Benton County, which was the 1970 employer, or Guarantee Chevrolet, the 1978 employer.

■ Based upon our examination of this record, we conclude that claimant's automobile accident of March 8 was directly traceable to claimant's severe compensable heart attack of May 14, 1970. Accordingly, claimant's first employer is responsible for the orthopedic injuries and heart complications resulting from the auto accident.

The preponderance of the medical testimony of the treating doctors supports this view.

Following the auto accident, claimant was examined by Dr. Carter, who reported:

"* * * I do feel that it is within a reasonable probability that his prior heart condition is one of the material contributing factors. * * * "

On September 30, 1978, Dr. Erickson, claimant's treating physician following his myocardial infarction of May 1970, reported:

"* * * It is impossible to state with certainty whether or not his heart disease was the cause of the loss of consciousness that caused the motor vehicle accident. I believe, however, that in view of the episodes of chest pain and irregular heart beat, occurring before the motor vehicle accident, associated with the findings of a conduction abnormality, and episodes of bradycardia shortly after the motor vehicle accident, that it is a highly likely possibility that the syncope leading to the motor vehicle accident was the result of arteriosclerotic coronary artery disease which also caused the myocardial infarction of 1970."

Dr. Griswold, in December, 1978, wrote the following:

"The question must also be raised as to whether or not he had an episode of cardiac arrest which caused the accident. The observation in the hospital of periods of cardiac arrest were at least 3 seconds would suggest that this probably was the cause of him losing consciousness at that moment.

"However, the period of amnesia for some 20 minutes prior to this, i.e., from Blue River area to Leader Dam area were probably not related to his cardiac condition. * * * Clinical diagnosis of Dr. Erickson at that time [was] that he had a conversion hysterical reaction which was the cause of his amnesia."

It was Dr. Griswold's opinion that it was heart damage from the original myocardial infarction that had caused claimant's present condition. Further, Dr. Griswold opined that claimant was totally and permanently disabled prior to his automobile accident and continued to be totally and permanently disabled.

SAIF argues that claimant's injury was directly traceable to his driving the car for Guarantee, that the second employer takes the worker as it finds him and that the "last injurious exposure" rule should control.

While this is the rule followed normally in cases involving successive injuries, where, as here, claimant showed a continuing history of heart symptoms following his compensable myocardial infarction and before the car accident, the evidence established that the second injury would not have occurred but for claimant's heart condition and can be said to be a direct and natural progression of the first compensable injury, the "last injurious exposure" rule does not apply. *See Calder v. Hughes & Ladd,* 23 Or App 66, 541 P2d 152 (1975). We find no evidence that claimant's employment on March 8, 1978, played any significant part in causing the accident. Therefore, there is no basis for charging the second employer with the injuries resulting from that accident.

Reversed.